UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**MICHAEL K. ARQUERO,**

        **Plaintiff,**        **CIVIL ACTION NO. 08-11206**

        **vs.**        **DISTRICT JUDGE NANCY G. EDMUNDS**

**COMMISSIONER OF**        **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

        **Defendant.**
_____/

**REPORT AND RECOMMENDATION**

**I.**    **RECOMMENDATION:**    This Court recommends that Defendant's Motion for Summary Judgment (docket no. 15) be GRANTED, that Plaintiff's Motion for Summary Judgment (docket no. 10) be DENIED, and that Plaintiff's Complaint be DISMISSED, as the ALJ's decision is supported by substantial evidence.

\*\*\*

**II.**    **PROCEDURAL HISTORY:**

    Plaintiff filed an application for a period of Disability and Disability Insurance Benefits on June 21, 2006, alleging that he had been disabled and unable to work since May 2, 2005 due to severe congenital stenosis at C 4-7/L4-5, disc degeneration, myelopathy and bilateral carpal tunnel syndrome. (TR 74-76, 88, 92). The Social Security Administration denied benefits. (TR 55-59). A requested *de novo* hearing was held on June 5, 2007 before Administrative Law Judge (ALJ) Henry Perez, Jr. who subsequently found that the claimant was entitled to a period of disability and Disability Insurance Benefits for a period of time beginning on May 2, 2005 and ending on March

9, 2007. (TR 13-23, 26). The Appeals Council declined to review the ALJ's decision and Plaintiff commenced the instant action for judicial review. (TR 3-5). The parties filed Motions for Summary Judgment and the issue for review is whether Defendant's denial of benefits as of March 9, 2007 was supported by substantial evidence on the record.

## III.   PLAINTIFF'S TESTIMONY, MEDICAL EVIDENCE AND VOCATIONAL EXPERT TESTIMONY

### A.   Plaintiff's Testimony

Plaintiff was 35 years old at the time of the time of the hearing. (TR 29). Plaintiff has a college education and past work experience as a peer support counselor, laborer, graphic design intern, senior designer, pressman, salesman, vice president and president and owner. (TR 29, 30-31, 93, 98). Plaintiff reported that he stopped working on May 2, 2005 due to difficulty standing and sitting for more than fifteen minutes. (TR 31). He testified that he did not have steady arms or control over his arms and hands, he was not coordinated in his movements, which had an adverse impact on his sales presentations. (TR 31). Plaintiff testified that he was diagnosed with a double crushed nerve disorder stenosis and degenerative disc disease and has undergone three surgeries related to this and his carpal tunnel syndrome. (TR 32). Plaintiff lives with his wife and two children.

Plaintiff underwent a cervical surgery on January 6, 2006. (TR 32). Three discs were removed and four vertebrae were fused. (TR 32). On September 1, 2006 Plaintiff had carpal tunnel surgery on his right wrist which included bone removal. (TR 32). In October 2006 Plaintiff underwent a lower lumbar surgery in which three discs were removed and four vertebrae were fused. (TR 33). Plaintiff testified that he engaged in physical therapy following both spine surgeries. (TR 33-34). He testified that in May 2007 his doctor recommended further physical therapy but his

insurance refused to cover it and he could not afford to go. (TR 34). Plaintiff testified that at the time of the hearing he had no written restrictions yet the doctor had advised him not to do any activities that make him uncomfortable. (TR 37). At the time of the hearing Plaintiff could stand for ten to fifteen minutes, walk for about an hour before he had to stop and rest and sit for fifteen to twenty minutes in an ergonomic chair. (TR 39-40). Plaintiff testified that his recliner is more comfortable than lying down and many nights he sleeps in it. (TR 40). Plaintiff testified that he can lift his son, who weighs thirty-five pounds, but he cannot carry him. (TR 41). On May 16, 2007 Plaintiff reported that he can lift forty pounds. (TR 136-37).

Plaintiff testified that he will undergo a second carpal tunnel surgery with bone removal on June 13, 2007 and he and his doctors anticipated his return to work on September 1, 2007. (TR 34). Plaintiff reported that prior to the carpal tunnel surgery he had numbness in his hands and forearms, muscle spasms and shaking in his hands. (TR 35). He stated that his "pain greatly diminished" following the neck and carpal tunnel surgeries. (TR 35).

Plaintiff testified that his medications at the time of the hearing included Allegra and Nasonex for allergies, Halcion and melatonin to help him sleep, Wellbutrin XL and Xanax for anxiety, Prevacid and Sodium, Anaprox, Vicodin and Zoloft. (TR 35). Plaintiff reports that he suffers short term memory loss and difficulty concentrating secondary to the medications. (TR 36).

Plaintiff testified that he is treated for depression because when his impairments began to impact his career, it affected him mentally and emotionally. (TR 36-37). Plaintiff testified that he has trouble sleeping and with medications he gets about six hours of sleep per night. (TR 37). In the past, he slept for one to one and one half hours per night. (TR 37).

**B.     Medical Evidence**

*1.      Evidence of Physical Impairments*

The record shows that Plaintiff treated with Lawrence Lieberman, M.D., from January 20, 2005 through April 26, 2007. (TR 217-40, 318-29). In July 2005 Plaintiff reported numbness in his right hand and Dr. Lieberman prescribed Celebrex and a right carpal tunnel splint. (TR 237). Dr. Leiberman diagnosed severe right carpal tunnel syndrome based on an EMG. (TR 235). In October 2005 the doctor diagnosed bilateral carpal tunnel syndrome based on Plaintiff's history of left-sided complaints and symptoms. (TR 234). The doctor noted that Plaintiff "continued to have significant pain and decreased functionality on the right." (TR 234).

On August 10, 2005 Gregory Alan Zemenick, M.D., concluded that an MRI of Plaintiff's cervical spine revealed "[d]isc bulging with some mild flattening of the cord at C4-C5," "[b]ulging disc and central protrusion of the C5-C6 disc causing mild compression of the cord," "[m]ild flattening of the cord at C6-C7 due to bulging of the disc," and "[r]eversal of the normal lordosis which may be due to muscle spasm." (TR 244). Plaintiff attended physical therapy from October 5, 2005 to October 28, 2005 for the C5 disc bulge and stenosis. (TR 207). On October 20, 2005 Dr. Zemenick opined that he believed Plaintiff has double crush syndrome with significant cervical problems. (TR 242-43).

Plaintiff presented to Rick E. Olson, M.D., on November 8, 2005 with complaints of neck pain, which Plaintiff reported noticing over the prior year. (TR 149-51). Plaintiff reported neck pain radiating into the left shoulder, difficulty walking, numbness and tingling in the first and second fingers, and weakness in hand grip. (TR 149). Plaintiff also complained of lower back pain, for which he had a several year history in a recurrent pattern. (TR 149, 204). The lower back pain radiated into the left groin and anterior thigh and Plaintiff reported generalized weakness and that

4

his leg was "giving out." (TR 149). Plaintiff reported that the pain was aggravated by movement, bending forward, lifting heavy objects, prolonged sitting and standing and walking long distances. (TR 149). The pain was relieved by lying down. (TR 149). An MRI of the cervical spine revealed cervical spondylosis without myelopathy and an MRI of the lumbar spine revealed unspecified lumbar radiculopathy. (TR 151).

On January 6, 2006 Plaintiff underwent an anterior cervical diskectomy at C4-C7 with a fusion at C4-C7, allograft and Orion plate for a cervical herniation with myelopathy. (TR 153-162). Bradley D. Ahlgren, M.D., performed the procedure. (TR 153). On December 5, 2005, prior to Plaintiff's surgery, Dr. Ahlgren had restricted Plaintiff to no repetitive bending, lifting or twisting and no overhead lifting, pushing or pulling. (TR 197). Plaintiff could sit and stand as tolerated. (TR 197). Through 2006 Dr. Ahlgren prescribed Percocet, Robaxin, Neurontin, and a series of three epidural steroid injections two weeks apart. (TR 184, 210-14). On March 20, 2006 Dr. Ahlgren noted that Plaintiff's C4-C7 fusion appeared to be healing well, Plaintiff could increase activities as tolerated, wean out of his cervical collar and begin physical therapy. (TR 184, 210). Dr. Ahlgren prescribed twelve sessions of physical therapy. (TR 210). On May 11, 2006 Dr. Ahlgren diagnosed Plaintiff with degenerative disk disease at L4-5 and L5-S1 with mild disk herniation at L5-S1 to the right. (TR 181). In September 2006 Plaintiff underwent a right carpal tunnel release surgery. (TR 246, 273, 326). In October 2006 Plaintiff underwent lumbar spine surgery with fusion at L3-S1. (TR 326).

On July 11, 2006 the state agency interviewer observed Plaintiff and reported that Plaintiff had trouble concentrating, sitting, standing and walking. (TR 88-90). He used a cane to walk and was assisted by his wife. (TR 89). Muhammad Khalid, M.D., completed a Physical Residual Functional Capacity Assessment dated October 6, 2006. (TR 271-78). Dr. Khalid concluded that

Plaintiff can lift and carry up to twenty pounds occasionally and ten pounds frequently, stand and/or walk about six hours in an eight-hour workday, sit about six hours of an eight-hour workday and was unlimited in ability to push and/or pull within the exertional limits, including the ability to operate hand and foot controls. (TR 272). Plaintiff is limited to performing postural activities only occasionally and avoiding even moderate exposure to vibrations. (TR 273, 275).

### 2. *Evidence of Mental Impairments*

Plaintiff attended weekly counseling with Marieda A. Bishop, M.S.W., A.C.S.W. from February 3, 2004 through May 31, 2005. (TR 148). Plaintiff had additional sessions on August 25, October 22 and October 27, 2005. (TR 148). Ms. Bishop reported that Plaintiff was treated for major depression disorder (code 296.00) and had been hospitalized for several days at the onset of treatment due to suicidal ideation. (TR 148). Ms. Bishop attributed most of Plaintiff's depression to "his marital problems and the economy." (TR 148). She noted that his October 2005 sessions "focused on his frustrations regarding his physical health which was profoundly affecting his ability to work." (TR 148). She observed that he appeared at his session in a neck brace and with soft braces on his wrists and that "it was apparent that he was in pain." (TR 148).

The record shows that Plaintiff treated with Gilbert R. Ladd, IV, M.D., P.C., from April 8, 2004 through June 14, 2006. (TR 163-174). In April 2004 Dr. Ladd diagnosed Plaintiff with Major Depression. (TR 173). He order Plaintiff to continue with Lexapro, Wellbutrin and Xanax. (TR 173). Dr. Ladd noted that Plaintiff's concentration and memory were "still low." (TR 173). Dr. Ladd's notes indicate that Plaintiff discussed his business, his wife and his children. (TR 173). In May 2004 Dr. Ladd advised Plaintiff to decrease Lexapro and start Zoloft. (TR 173). In May 2004 Plaintiff reported irritability and anxiety. (TR 172). In December 2004 Dr. Ladd noted that Plaintiff's depression was "stable despite stress." (TR 169). A medication log shows that from

August 3, 2004 Plaintiff has been prescribed Wellbutrin, Zoloft, Halcion, Sonata and Xanax. (TR 168). Plaintiff discontinued Sonata in March 2005. (TR 168). In March 2006 Dr. Ladd added Melatonin to assist Plaintiff in sleeping. (TR 164). In June 2006 Dr. Ladd noted that Plaintiff was walking slowly with a cane and Plaintiff reported that his neurologist thought he may have multiple sclerosis. (TR 164). Dr. Ladd reported that Plaintiff's depression was "stable." (TR 163).

Jerry Csokasy, Ph.D., completed a Mental Residual Functional Capacity Assessment and Psychiatric Review Technique on October 5, 2006. (TR 251-69). Dr. Csokasy diagnosed Plaintiff with Major Depression and concluded that Plaintiff had moderate difficulties in maintaining concentration, persistence and pace. (TR 251-52, 258, 265). Plaintiff had mild limitations in activities of daily living and maintaining social functioning and no episodes of decompensation. (TR 251).

### C.  Vocational Expert Testimony

The Vocational Expert (VE) classified Plaintiff's past work as a peer support counselor as semi-skilled and sedentary, graphic design intern as semi-skilled and light, senior designer as skilled and sedentary, vice-president of his design company as skilled and light, and owner and president of his company as skilled and light. (TR 46). The VE testified that Plaintiff has the following transferable skills: sales, office administration, supervision, bidding, cost estimates, job production estimates, client interaction, client billing, art direction, graphic design, knowledge of computers, (sic) materials, and print production. (TR 46). The VE classified the skills as sedentary and that the jobs number 5,200 for the region and 10,400 for the state. (TR 47).

The ALJ asked the VE to consider a person with Plaintiff's age, education and work experience able to perform a skilled job and needing an exertional limitation of lifting ten pounds occasionally and five pounds frequently, the ability to sit six hours and walk and stand for two hours

per day and accommodating moderate limitations in handling, fingering and fine manipulation. (TR 47). The VE testified that such a person could perform Plaintiff's past relevant work as a peer support counselor. (TR 47). Plaintiff was a peer support counselor from July 1992 to May 1994. (TR 47). The VE testified that Plaintiff would not be able to perform the other transferable jobs because he would need constant use of his right hand to use a computer mouse. (TR 48).

The VE testified that if Plaintiff's testimony were credible and his exertional impairments as described were supported by the medical evidence, the jobs available are peer support counselor and 1,700 of the transferable skill jobs and unskilled work including information clerk (1,400 jobs), I.D. clerk (1,700 jobs), reception clerk (3,100 jobs), visual inspector (3,200 jobs) and video surveillance monitor (1,500). (TR 48-49). If Plaintiff's non-exertional limitations were considered, the VE testified that there was a period of time in which Plaintiff could not perform work. (TR 49). The VE added that it was "hard to determine if at this point he could do the peer support counselor or at what point he would have been able to do it." (TR 49). The VE said it would depend on whether Plaintiff could maintain regular attendance. (TR 49). The VE noted that "there was certainly a period of time to which he could not have even (sic) done that." (TR 49).

## IV. ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that Plaintiff met the disability insured status requirements as of the alleged date of onset through June 30, 2008, had not engaged in substantial gainful activity since May 2, 2005, suffered from disorders of the back, bilateral carpal tunnel syndrome and depression, but he does not have an impairment or combination of impairments equal to the Listing of Impairments. (TR 17). The ALJ found that from May 2, 2005 through March 8, 2007 Plaintiff did not have the functional capacity to perform his past relevant work and no jobs existed in the economy which Plaintiff could have performed. (TR 17). The ALJ found that Plaintiff had medical improvement

8

as of March 9, 2007, the date on which his disability ended, and as of that date he had the ability to perform a limited range of sedentary work including his past relevant work as a peer support counselor. (TR 20-23). Therefore, he was not suffering from a disability under the Social Security Act as of March 9, 2007. (TR 23).

## V.    LAW AND ANALYSIS

### A.    Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Commissioner*, 203 F.3d 388, 389-90

(6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

### B. Framework For Social Security Disability Determinations

Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1) he was not presently engaged in substantial gainful employment; and

(2) he suffered from a severe impairment; and

(3) the impairment met or was medically equal to a "listed impairment;" or

(4) he did not have the residual functional capacity to perform his relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented him from doing his past work, the Commissioner, at step five, would consider his residual functional capacity ("RFC"), age, education and past work experience to determine if he could perform other work. If he could not, he would be deemed disabled. *See* 20 C.F.R. § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

### C. Analysis

*1. Determination of Closed Period of Disability*

Plaintiff's sole argument on appeal is that the ALJ's decision that Plaintiff was no longer disabled as of March 9, 2007 is not supported by substantial evidence. (Docket no. 10). The ALJ found that Plaintiff was disabled for a closed period of time from May 2, 2005 through March 8, 2007. (TR 19). The ALJ found that as of March 9, 2007, as a result of medical improvement, Plaintiff was no longer disabled when he was found to have the residual functional capacity to perform less than the full range of sedentary work[1] and his prior relevant work as a peer support counselor. (TR 21). Plaintiff argues that this finding is not supported by substantial evidence because much of the evidence that Plaintiff was disabled after March 9, 2007 was not available to the ALJ. Plaintiff argues that after March 9, 2007 Plaintiff's medications for mental impairments were increased, he was in extensive rehabilitation following his back surgeries, he underwent a second carpal tunnel surgery on June 29, 2007 followed by rehabilitation and therapy, and his treating physicians had not cleared him to return to work until October 1, 2007. (Docket no. 10). Plaintiff argues that new and material evidence exists after the ALJ's July 19, 2007 decision.

"In a 'closed period' case, the decision maker determines that a new applicant for disability benefits was disabled for a finite period of time which started and stopped prior to the date of his decision." *See Shepherd v. Apfel*, 184 F.3d 1196 n. 2 (10th Cir. 1999). "Typically, both the disability decision and the cessation decision [in a closed period case] are rendered in the same document." *Id.* The medical improvement standard applies to cases involving a closed period of disability. *Id.; Niemasz v. Barnhart*, 155 Fed. Appx. 836, 839-40 (6th Cir. 2005). Once a claimant has been awarded disability benefits, an ALJ must find that there has been a medical improvement

---

[1] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 404.1567(a).

11

in the beneficiary's condition before terminating the claimant's benefits.  Title 42 U.S.C. § 423(f) provides:

> A recipient of benefits under this title . . . based on the disability of any individual may be determined not to be entitled to such benefits on the basis of a finding that the physical or mental impairment on the basis of which such benefits are provided has ceased, does not exist, or is not disabling only if such finding is supported by –
>
> (1) substantial evidence which demonstrates that –
>
> > (A) there has been any medical improvement in the individual's impairment or combination of impairments (other than medical improvement which is not related to the individual's ability to work), and
> >
> > (B) the individual is now able to engage in substantial gainful activity;

42 U.S.C. § 423(f)(1).  Any improvement in the beneficiary's impairment meets the statutory standard for medical improvement.  *See* 42 U.S.C. § 423(f); 20 C.F.R. § 404.1594(c)(1).

"To apply the medical improvement test, the ALJ must first compare the medical severity of the current impairment(s) to the severity of the impairment(s) which was present at the time of the most recent favorable medical decision finding the claimant disabled." *Shepherd* 184 F.3d at 1201. "Then, in order to determine that medical improvement is related to ability to work, the ALJ must reassess a claimant's residual functional capacity (RFC) based on the current severity of the impairment(s) which was present at claimant's last favorable medical decision." *Id.*

The ALJ determined that from May 2, 2005 through March 8, 2007 Plaintiff "did not possess the physiological or psychological functional capacity to perform even basic work activities on a sustained basis." (TR 19).  The ALJ concluded, based on testimony from the VE, that with this residual functional capacity, Plaintiff was able to perform neither his past relevant work nor other work existing in significant numbers in the economy. (TR 19).  The ALJ found that as of March 9,

2007 Plaintiff demonstrated medical improvement in his impairments.  The ALJ relied on a Physical Therapy Discharge Report dated March 9, 2007 to show that Plaintiff had medical improvement. (TR 279).  The ALJ also concluded that Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms as of March 9, 2007 are not entirely credible.  According to the Physical Therapy Discharge Report, Plaintiff met all of his long term goals.  (TR 279).  He had improved to 78 percent on the Functional Assessment Scale, his subjective report of pain had improved to one to two on a scale of ten, Plaintiff had increased strength in his lower extremity and trunk with improved function, had no significant gait abnormalities and ambulated without an assistive device.  (TR 279).  He had improved flexibility in his lower extremities and was independent in self-managing his pain and his condition.  (TR 279-281).  A Back and Lower Extremity Functional Scale showed improvement in all areas between January 12, 2007 and March 8, 2007.  (TR 282).

Plaintiff's testimony supports a finding that Plaintiff's exertional limitations improved between July 2006 and June 2007.  As the ALJ pointed out, in a Function Report dated July 22, 2006, Plaintiff reported that he could lift less than ten pounds, he needed a cane or something stable to balance himself when standing and needed a cane to walk or climb stairs.  (TR 123).  At the June 2007 hearing, Plaintiff reported that he can lift, but not carry, up to thirty-five pounds and walk for up to an hour.  (TR 39, 41).  As of the date of the March 8, 2007 Physical Therapy Discharge Report, Plaintiff no longer needed a cane for standing or ambulating.  (TR 279, 282). On May 16, 2007 Plaintiff reported that in mid-March and early April he had begun to do housework again and he could lift forty pounds.  (TR 137).

Plaintiff treated weekly with Ms. Bishop from February 3, 2004 to May 31, 2005, and attended additional sessions on August 25, October 22 and October 27, 2005.  Ms. Bishop noted that

13

Plaintiff terminated his treatment after "his marriage greatly improved." (TR 18, 22, 148-151). The ALJ also noted that despite progress reports from April 2004 to June 2006 which referenced "anxiety," Plaintiff had some emotional improvement. (TR 22). The record supports this conclusion. On June 14, 2006 Dr. Ladd noted that Plaintiff's depression was "stable." (TR 163). Plaintiff reported that he was sleeping better and the melatonin which Dr. Ladd had prescribed was helping. (TR 163). Dr. Ladd noted that Plaintiff reported, "I'm not depressed like I was a few years ago." (TR 164). In November 2005 Plaintiff also noted that Plaintiff's depression was "nothing like two years ago." (TR 165). On January 23, 2007 Dr. Lieberman noted that Plaintiff attended the examination for "follow up of depression." (TR 320). Dr. Lieberman noted that Plaintiff's "[m]edication (see med list) is well tolerated with insignificant side effects necessitating changes. . . . Clinical depression is essentially quiescent at this time." (TR 320). The ALJ's finding that Plaintiff had a medical improvement in his impairments as of March 9, 2007 is supported by substantial evidence.

Next, the ALJ properly reassessed Plaintiff's RFC based on his medical improvement. *See Shepherd*, 184 F.3d at 1201. The ALJ concluded that as of March 9, 2007 Plaintiff had the RFC to perform sedentary work with no lifting over five pounds frequently or ten pounds occasionally, only occasional handling or fine and gross manipulation with the ability to sit eight hours and stand and walk two hours of an eight-hour workday. (TR 22). This exertional limit is more restrictive than Plaintiff's testimony that he can lift up to thirty-five pounds. Furthermore, Plaintiff has the ability to walk without an assistive device. The ALJ accounted for Plaintiff's carpal tunnel syndrome by limiting handling, fine and gross manipulation. The ALJ included these restrictions in a hypothetical question to the VE. The VE testified that Plaintiff can perform his past relevant work as a peer support counselor. The ALJ properly relied on the VE's testimony. The ALJ's decision that as of

March 9, 2007 Plaintiff could perform his past relevant work and was no longer disabled is supported by substantial evidence. (TR 22-23).

*2.    New Evidence*

The Plaintiff argues that the ALJ's finding that the severity of Plaintiff's impairments decreased as of March 9, 2007 ignores evidence showing that Plaintiff continued to be disabled after March 8, 2007 and this evidence "was not available to the ALJ."[2] The "court is confined to review evidence that was available to the Secretary, and to determine whether the decision of the Secretary is supported by substantial evidence." *Wyatt v. Sec'y of Health and Human Servs.*, 974 F.2d 680, 685 (6th Cir. 1992) (*citing Richardson*, 402 U.S. at 401). The court may still remand the case to the ALJ to consider this additional evidence but only upon a showing that the evidence is new and material and "that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). This is referred to as a "sentence six remand" under 42 U.S.C. § 405(g). *See Delgado v. Comm'r of Soc. Sec.*, 30 Fed. Appx. 542, 549 (6th Cir. 2002). The party seeking remand has the burden of showing that it is warranted. *See Sizemore v. Sec'y of Health and Human Servs.*, 865 F.2d 709, 711 (6th Cir.

---

[2] Contrary to Plaintiff's assertion in his Reply to Defendant's Motion for Summary Judgment, the ALJ's July 19, 2007 decision *is* the agency's final decision. (Docket no. 17 at 4 of 11). The Court directs Plaintiff's counsel to *Sims v. Apfel*, 530 U.S. 103 (2000) holding that
> SSA regulations provide that, if the Appeals Council grants review of a claim, then the decision that the Council issues is the Commissioner's final decision. But if, as here, the Council denies the request for review, the ALJ's opinion becomes the final decision.

*Id.* at 106-07. The Notice of Appeals Council Action dated January 17, 2008 was a denial of Plaintiff's request for review. The Appeals Council's language could not be clearer: "We found no reason under our rules to review the Administrative Law Judge's decision. Therefore, we have denied your request for review." (TR 2). The ALJ's July 19, 2007 decision is the agency's final decision.

1988). "A claimant shows 'good cause' by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." *Foster*, 279 F.3d at 357 (*citing Willis v. Sec'y of Health & Human Servs.*, 727 F.2d 551, 554 (6th Cir. 1984)). "In order for the claimant to satisfy his burden of proof as to materiality, he must demonstrate that there was a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore*, 865 F.2d at 711 (*citing Carroll v. Califano*, 619 F.2d 1157, 1162 (6th Cir. 1980)); *see also Cotton v. Sullivan*, 2 F.3d 692, (6th Cir. 1993) ("Where a party presents new evidence on appeal, this court can remand for further consideration of the evidence only where *the party seeking remand* shows that the new evidence is material.")(emphasis added)(citations omitted). "Evidence of a subsequent deterioration or change in condition after the administrative hearing is deemed immaterial." *Wyatt*, 974 F.2d at 685 (*citing Sizemore*, 865 F.2d at 712).

The evidence which was submitted to the Appeals Council is not evidence that was before the ALJ. As set forth above, Plaintiff initially offered no explanation for failing to provide this information prior to the ALJ's decision yet in his Reply brief states that "Plaintiff alleges that it goes without argument that good cause exists for not submitting records to the ALJ when those records did not exist at the time of the ALJ's decision." (Docket no. 17 at 5 of 11). New and material evidence submitted must relate "to the period on or before the date of the administrative law judge hearing decision." 20 C.F.R.§ 404.970(b). Plaintiff has not provided specific citations to the transcript record or the exhibit numbers for the "new" evidence on which it is relying. The Court will therefore review those documents submitted to the Appeals Council as exhibits and appearing at pages 363-398 of the Transcript Record. (TR 363-398).

16

With respect to the documents dated prior to the ALJ's July 19, 2007 decision, Plaintiff has provided no reason that this information was not timely obtained and submitted to the ALJ. (TR 370-72). Furthermore, the documents dated prior to the ALJ's July 19, 2007 decision do not provide evidence contrary to the ALJ's findings that Plaintiff underwent medical improvement as of March 9, 2007 and the documents do not contain new or material evidence. (TR 370-72, 382-84, 385). The records dated after the ALJ's July 19, 2007 decision include a personal medication record dated August 2, 2007, Dr. Ahlgren's Postoperative Exam- Lumbar Spine report dated October 2, 2007, a Spine Patient Follow Up Evaluation and Management form dated October 2, 2007, Dr. Ladd's notes from September 13, 2006 through December 7, 2007[3] and Dr. Ladd's medication log from August 3, 2004 through October 5, 2007 (duplicative through June 14, 2006 of the record before the ALJ). (TR 168, 366-67, 369, 373, 374-75, 376-77, 378-81). The Court has reviewed these records including the medication logs and there is no indication that these records provide new or material evidence relating to the period of time prior to the ALJ's July 19, 2007. Plaintiff also submitted a note from Dr. Ladd dated December 6, 2007, more than four months after the ALJ's decision, in which Dr. Ladd stated that "[a] combination of physical and mental problems prevented [Plaintiff] from attempting to return to work until 10/1/07. Before that time he was not able to work in any capacity." (TR 365). Plaintiff has provided no reason for failing to submit this opinion prior to the ALJ's hearing, the letter is not specific as to whether it applies to the time period prior to the ALJ's July 19, 2007 decision, and the ultimate decision of disability is reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(e).

---

[3]Dr. Ladd's notes through June 14, 2006 were included in the record before the ALJ and were considered at that time. (TR 163-64, 380-81).

Some of the Physical Therapy Reports and supporting documents dated from January 11, 2007 through March 13, 2007 are duplicative and appeared in the record before the ALJ and the remainder are not material evidence. (TR 368, 386-97). Plaintiff has not shown that the documents dated after the ALJ's decision relate to the time period on or before the ALJ's decision, the few documents which relate to the period of time prior to the ALJ's decision are not new and material, and several of the documents are duplicative, appear in the record that was before the ALJ and were considered by the ALJ. Plaintiff has not shown good cause for failing to submit this evidence prior to the ALJ's hearing. For these reasons, the Court will deny Plaintiff's request to remand this case for consideration of the documents which were submitted to the Appeals Council.

## **CONCLUSION**

The ALJ's decision was within the range of discretion allowed by law, it is supported by substantial evidence and there is simply insufficient evidence to find otherwise. Defendant's Motion for Summary Judgment (docket no. 15) should be granted, that of Plaintiff (docket no. 10) denied and the instant complaint dismissed.

## **REVIEW OF REPORT AND RECOMMENDATION**

Either party to this action may object to and seek review of this Report and Recommendation, but must act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers*

*Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.


Dated: February 11, 2009         s/ Mona K. Majzoub
                                 MONA K. MAJZOUB
                                 UNITED STATES MAGISTRATE JUDGE



### PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: February 11, 2009         s/ Lisa C. Bartlett
                                 Courtroom Deputy